# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

Western DIVISION

Bobby W. Terry

v.

U.S. Army
WOMACK ARMY MEDICAL Center
Ft. Bragg N.C.

NO. 5:21-cv-205-m

COMPLAINT

Plaintiff resides at:

5036 DEERFIELD LANE

DANville Virginia 24540

Defendant(s)' name(s) and address(es), if known:

U.S. Army Womack Army Medical Center Ft. Bragg N.C.

1

Jurisdiction in this court is based on:

_28 U.S.C. Chapter 171 Torts Claims Procedures

The acts complained of in this suit concern:

Misidentification of the current incision points that led to an incomplete Gallbladder Removal surgery.

2

Case 5:21-cv-00209-FL    Document 1    Filed 05/06/21    Page 2 of 23

(If you need more space, or wish to include any further information for consideration, please attach additional sheets.)

I seek the following relief:

$500,000 for pain And suffering.

6 MAY 2021

DATE

SIGNATURE OF PLAINTIFF

5036 DEERFIELD LANE

Danville VA. 24540

910 578-1136

ADDRESS AND PHONE NUMBER OF PLAINTIFF

3

# In the United States Court of Federal Claims

<u>Bobby Wayne Terry</u>  )
                                )
_____  )
               **Plaintiff(s),**  )      Case No. _____
                                )
**v.**  )         Judge _____
                                )
**THE UNITED STATES,**  )
                                )
              **Defendant.**  )

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page.

If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1. **JURISDICTION.** State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see e.g.*, 28 U.S.C. §§ 1491-1509).

<u>This is a Federal Tort Claim against Womack Army Medical Center, Fort Bragg North Carolina. As per 28 U.S.C. Chapter 171,Tort Claims Procedures, The case can be filed at the nearest Federal Court closest to where the incident occurred.</u>

## 2. PARTIES

Plaintiff, Bobby Wayne Terry , resides at 5036 Deerfield Lane

(Street Address)

Danville Virginia 24540 , 910 578-1136

(City, State, ZIP Code)    (Telephone Number)

If more than one plaintiff, provide the same information for each plaintiff below.

**RELATED CASES.** Is this case directly related to any pending or previously filed cases in the United States Court of Federal Claims?    ( ) Yes (●) No

If yes, please list the case(s) below, including case number(s):

3. **STATEMENT OF THE CLAIM.** State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

## OVERVIEW:

Retired Master Sargeant Bobby W. Terry had a Cholecystectomy surgery at Womack Army Medical Center (Dr. Alcover-Ballard), Ft. Bragg N.C. in June 2012. After immediately complaining of abdominal pain to the operating Surgeon and numerous other physicians that he was referred to, it was concluded via numerous medical procedures over a 5 year time span that he had to endure a Completion Cholecystectomy for gallbladder remnant with gallstones that remained from the initial surgery. The failure of Dr. Alcover-Ballard to correctly identify the incision locations caused Mr. Terry to endure unnessary pain and suffering that vastly affected his quality of life.

**4. RELIEF.** Briefly state exactly what you want the court to do for you.

 Request the court to recognize that the surgery dated June 2012 was not accomplished with the appropriate standard of care and award Mr. Bobby W. Terry the requested compensation for years of pain and suffering.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __5th__ day of __March__, __2021__.
        (day)           (month)        (year)

_____
Signature of Plaintiff(s)

3. Statement of the Claim (Cont.)

SPECIFICS:
Plaintiff tells the story in his own words saying:
1. On 19 June 2012, Dr. Brenda J. Alcover-Ballard performed
my Gallbladder Cholecystectomy at Womack Army Medical Center,
Ft. Bragg N.C.. The Laparoscopic method was utilized.  On
5 July 2012 during the follow-up appointment, I stated to
Dr. Alcover-Ballard that I was still experiencing the same
pain as before having the surgery.  Dr. Alcover-Ballard
stated that this was most likely post operative pain and it
should subside with time. The pain continued ranging from
2-8 consistently on a scale of 1-10.  In September 2014, the
pain grow worse with 7-8 pain rating occurring more frequently.
I was seen in October 2014 by Dr. Jason White, Ft. Bragg Troop
and Family Medical Center for pain in the upper right abdominal
area. I was referred to Dr. Anthony Daniels of the Fayetteville
Gastroenterology Associates. Dr. Daniel's conducted an MRCP on
December 1 2014, a stomach antrun biopsy and EDG on
December 8 2014. Dr. Daniel's conducted a US RUQ on 31 December 2014.
Dr. Joseph Henderson, also of the Fayetteville Gastroenterology
Associates, conducted a EUS and ERCP to remove gallstones from
the cystic duct. During my discharge after the EUS/ERCP,
Dr. Henderson stated to my wife and I that the amount of gallbladder
remaining was rare and unusual to see.  On follow-up visit with
Dr. Daniels on 3/18/2015, I asked about the possible reoccurrance
of gallbladder problems and removal of the large gallbladder remnant.
He stated that I could have future problems but he wouldn't recommend
removal at this time because of the amount of scar tissue in that area
now. I finally had a completion cholestysectomy at Duke Hospital,
Raleigh N.C. by Dr. Ranjan Sudan.

2.  I feel Dr. Alcover-Ballard rushed through my surgery because
of possible overload of surgeries that day.  During my Pre-op
appoint for the gallbladder removal, there were at least 13 other
patients there for the same thing. I requested information reference
the number of surgeries she had that day and the day before but I
was told that information was not releasable to me. The visit with
Dr. White started an ordeal of various medical procedures and an
eventual completion cholestysectomy to remove a remnant
gallbladder/cystic duct and gall-stones.

3.  Based on The Standard of Practice set forth by the Society of American Gastrointestinal Endoscopic Surgeons, several standards were not followed.
- The cystic duct should be identified at its junction with the gallbladder.
- Meticulous dissection of the cystic duct and cystic artery is essential.
- The surgeon should not hesitate to convert to an open operation for technical difficulties, anatomic uncertainties or anatomic anomalies, especially on cases of acute cholecystitis.

4.  I was affected socially as to numerous missed functions/family gatherings that I was unable to attend because the pain level left me incapacitated at home.  Two examples of this was I missed family functions such as my Granddaughter's 1st grade graduation and two family reunions that now several attending family members are deceased.  These and several other events I missed will never happen again.

5.  Day-to-day activities and projects were alot of times put on hold or someone else accomplished it due to my inability to deal with the pain and task at hand. An example of this is during a classic-car cruise scheduled as part of a Christmas parade, I had to cancel at the last minute because of the pain.  I am greatful for a neighbor that knew when I couldn't do lawn care and would take care of it for me.  Before the initial surgery, I was very active in running and other sports.  After that surgery, my physical activity level dropped tremendously. There was countless nights that I slept in a chair because laying in bed was uncomfortable.

6.  Monetarily, I was affected by having to take the equivalent of forty-four days sick leave from my workplace from the initial to completion surgeries.

7.  Intimately, my marriage was strained due to the physical/mental lack of desire because of the frequent constant pain.  Also my marriage suffered because I was snappy and inconsiderate to my wife because I was so tired of the constant pain.

8.  Professionally, it affected me as numerous times at work, the manager and co-workers was understanding and incurred extra workload as I couldn't concentrate on my duties as an air traffic controller during episodes of pain.  Most of all, as a dedicated 20 year Air Force retiree, the military turned their back on me, an example being how the WAMC Commander in 2015 immediately stated Dr. Alcover-Ballard did nothing wrong without knowing all the facts.

Medical review to follow.

## INTRODUCTION

- Sharon Harper is a retired Lieutenant Commander from the Naval Nurse Corps. She is also a Master's prepared RN and a Legal Nurse Consultant for the Military Defender since 1993, as well as several civilian Attorneys during her career. Her case load includes, but not limited to insurance fraud, elder abuse, murder, medical malpractice, sexual harassment, surgical errors, mishap investigations, child molestation, spousal abuse, sexual misconduct, rape, quality of life issues for imprisoned service members, medical disability ratings, PTSD, major depression, as well as medical board appeals for permanent disability ratings. All cases tap into my Risk Management and Quality Assurance expertise.

## I.     EXECUTIVE SUMMARY

Air Force Retired Master Sergeant Bobby Terry was seen at Womack Army Medical Center, Fort Bragg, NC in 2012 for complaints of severe pain in his Right Upper Quadrant (RUQ).   He was diagnosed by Dr. Alcover-Ballard with Cholelithiasis.  MSGT Terry underwent a Laparoscopic Cholecystectomy at Womack on June 19, 2012 by the same surgeon.

In laymen's terms he had a type of surgery where the gallbladder and cystic duct are removed.

MSGT Terry was assured by Dr. Alcover-Ballard that the Laparoscopic Cholecystectomy had been successful. The surgery was not a partial cholecystectomy.

Nevertheless, MSGT Terry endured intermittent, RUQ pain for the following eight years. The pain was sometimes rated as a 7 out of 10 on the medical pain scale, used to determine the severity of a patient's pain.  A 1 is very minimal pain and a 10 is excruciating, intolerable pain.

Experiencing considerable discomfort, MSGT Terry consulted multiple physicians and surgeons; consistently, he was diagnosed with "remnants" of his gallbladder and cystic duct remaining within his body, to include several gallstones.

One surgeon, Dr. Joseph Henderson at Cape Fear Valley Health Systems, stated in 2015 that MSGT Terry had a "large gallbladder remnant" (about a third of the distal end of the gallbladder and the cystic duct).  **[See Section II - diagram of a gallbladder and the biliary duct system used by Dr. Henderson to illustrate the amount of remnant left in the patient.]**    This remnant would not be present if a complete Laparoscopic Cholecystectomy had been properly performed by Dr. Alcover-Ballard in 2012.

MSGT Terry underwent several diagnostic studies over the followings years; they confirmed the presence of gallbladder and cystic duct remnants. [These tests and findings are detailed in Section II].

In 2017, Dr. Ranjan Sudan, professor and vice chair of education in the Department of Surgery at the School of Medicine and Duke Health general surgeon, performed another Laparoscopic Cholecystectomy. Dr Sudan also completed an intraoperative Cholangiogram which a surgeon may perform if there is <u>any doubt about the identification of certain anatomical structures</u> seen during the procedure. Dr. Sudan's findings stated, "retained gall bladder with stones." His findings confirmed MSGT Terry was indeed still suffering with cholecystitis and cholelithiasis.

Dr. Alcover-Ballard did not perform an intraoperative cholangiogram during her Laparoscopic Cholecystectomy. THIS STRONGLY SUGGESTS SHE HAD NO DOUBT ABOUT MSGT TERRY'S ANATOMICAL STRUCTURES, thus completing the surgery with certainty it was a <u>complete laparoscopic cholecystectomy</u>. It was not a complete surgery (See Section II).

Studies show that human biliary tracts differ radically – there is no "normal anatomy." Thus, **<u>"anatomic variants are well known in the medical community, it is the surgeon's responsibility to recognize these normal variations when they occur."</u>** (See Section II)

"Currently, 90 percent of cholecystectomies are done laparoscopically, and the procedure is <u>the most common one performed in a general surgery practice</u>" (See Section II). The traditional procedure during a laparoscopic cholecystectomy is to ligate both cystic duct and cystic artery by clips. The gall bladder is removed with its duct (cystic duct) close to its junction with the common bile duct, both cystic duct and cystic artery ligated by clips. The evidence appears crystal clear that this "most common" procedure by Dr. Alcover-Ballard was not performed properly. (See Section II)

A thorough review of MSGT Terry's medical/surgical records fails to reveal why Dr. Alcover-Ballard did not perform a complete Laparoscopic Cholecystectomy. The surgeon was <u>not</u> "unequivocally certain" or "meticulous" in identifying all the anatomical structures associated with the surgery. (See Section II)

Because of Dr. Alcover-Ballard's incomplete surgical procedure, "the most common" surgery performed in a general surgery practice, MSGT Terry has suffered for years. At times, he had such severe pain it was next to impossible to

participate in his normal daily work-out, volleyball (his favorite sport), restoring classic cars (his passion), yard work, social events, and even sleep.

Negligence appears irrefutable, based on MSGT Terry's complete medical record and Dr. Alcover-Ballard's incomplete Laparoscopic Cholecystectomy, findings from other surgeons such as Drs. Henderson and Rahbar, as well as published, medical articles by well-known General Surgeons (See Section II).

To obtain a professional, medical opinion about his Gastroenterology (GI) medical history, MSGT Terry called Dr. Reza Rahbar-Semnani earlier this year. Dr. Rahbar-Semnani is a GI specialist in Raleigh, NC. This surgeon personally stated to MSGT

Terry that he could "not be(ing) certain what the remnants were, because he physically didn't see the removal" (See Section II). The statement demonstrates doubt in this surgeon's professional, medical opinion. This also supports MSGT Terry's claim of the original Laparoscopic Cholecystectomy by Dr. Alcover-Ballard not being properly performed.

## II.    CHRONOLOGY

The findings of client's medical records from original diagnosis (2012) to this year (2021) are placed in chronological order. The findings and subsequent comments in the end will demonstrate the inadequacies and incomplete Laparoscopic Cholecystectomy of the original surgeon, Dr. Alcover-Ballard, as well as the original Pathologist, Dr. Novae Simper, MAJ/MC. The chronological order will also demonstrate how long the pain and suffering MSGT endured over the years because of an incomplete Laparoscopic Cholecystectomy. **(Comments in italics are from S. Harper, LNC)**

**April 3, 2012** (Womack Army Medical Center) – Patient had a Complete Ultrasound of Abdomen @ Valley Regional Imaging in Fayetteville, NC. Findings by Dr. David Fisher showed a gallbladder that demonstrated a "gravitational dependence compatible with gallstone". <u>IMPRESSION</u>: Cholelithiasis. Referral sent to General surgery.

**May 17, 2012** (Womack AMC) – Referral to General Surgeon, Brenda Alcover-Ballard, MD. IMPRESSION: Cholelithiasis. PLAN: Laparoscopic Cholecystectomy.

**June 19, 2012**: (Womack) - **Cholecystectomy performed by Dr. Alcover-Ballard. Pathologist, Dr. Novae Simper, MAJ/MC,** received specimen, labeled,

"Terry, gallbladder and contents". GROSS DESCRIPTION: "Submitted is a 9.0 x 2.5 x 1.0 cm gallbladder with a thin wall measuring up to 0.2 cm in greatest thickness. There are no gallstones located within the gallbladder. The cystic duct is not obstructed…"

**July 5, 2012**: Post-op F/U with Dr. Alcover-Ballard. Patient released w/o complications.

**October 8, 2014:** (Womack Medical Clinic) – Patient w/ complaint of intermittent (for a couple of years) Right Upper Quadrant (RUQ) pain, now at 7/10 on the medical pain scale. Seen by Jason White (PA? NP?) PLAN: CT scan w/ contrast and endoscopy.

**October 20, 2014**: (Womack) – CT scan of abdomen and pelvis, with contrast. IMPRESSION: "Questionable mild thickening of the posterior wall of the antrum and pylorus." Something was questionable with these results, so "Further evaluation with endoscopy" was recommended. Reported by Dr. Won Song, Medical Corps.

**Nov 25, 2014**: (Fayetteville Gastroenterology Associates "FGA") Patient went to civilian, GI practice, for evaluation and review of his medical status. Patient was seen by Dr. Anthony Daniels. PLAN: MRCP without contrast.

*A MRCP is a Magnetic resonance cholangiopancreatography (**MRCP**). This is a technique for viewing the bile ducts and the pancreatic duct. It can also show the pancreas, gallbladder, and liver. S. Harper, LNC*

**December 1, 2014**: An MRCP was performed. (Valley Regional Imaging) FINDINGS: NOT normal. There was a "**saccular cystic structure in the gallbladder fossa** connected to the cystic duct".

*My question…is this the cystic duct and part of the gallbladder left in patient? S. Harper, LNC*

**December 8, 2014**: An Esophagogastroduodenoscopy (EGD) was performed by Dr. Anthony Daniels.@ FGA. Again, there is a finding of "Abnormal vascularity in the antrum…". Patient was diagnosed with Gastritis.

**December 31, 2014:** Another Ultrasound performed @ Valley Regional Imaging. FINDINGS and IMPRESSION: again… "**14 mm cystic structure in the gallbladder fossa…cystic duct remnant**." The Radiologist was Dr. Terri Zacco.

**January 22, 2015:** (FGA) – Seen for follow up evaluation by Dr. Anthony Daniels. MD wanted to r/o "retained common bile duct (CBD) stones". PLAN: Once again…an Endoscopic Ultrasound (EUS) and an ERCP.

**January 29, 2015:** (Cape Fear Valley Medical Center). Dr. Joseph Henderson performed an EUS and an ERCP. POSTOPERATIVE DIAGNOSES: PROCEDURE #1: EUS – "Large gallbladder remnant, cystic duct stone…." PROCEDURE #2: ERCP – "Large gallbladder remnant, mechanical lithotripsy of cystic duct stone, balloon sweep of the cystic duct stone, balloon sweep of the common bile duct."

*With a complete and successful Cholecystectomy, the patient should not have these remnants. S. Harper, LNC*



*Appears to be 1/3 of gallbladder and the entire cystic duct with stones were found.*
*S. Harper LNC*

**October 5, 2016**: Patient seen by Dr. Anthony Daniels, again for continued abdominal pain "similar to his pre-cholecystectomy pain".

**November 3, 2016** - Another endoscopic ultrasound (EUS)

**February 13, 2017** – Patient, again goes to Dr. Anthony Daniels with complaint of abdominal pain. <u>PLAN</u>: ANOTHER EUS and ERCP.

**March 20, 2017**: Procedures completed by Dr. Henderson. Gallbladder remnants were seen again, as well as cystic duct stones. An attempt was made during a cholangiogram to advance a guide wire, but the wire "got curled up in the gallbladder remnant". The MD also tried to get an occlusion balloon within the "very narrowed and tortuous cystic duct." An attempt to get a portion of the gallbladder remnant was unsuccessful and "would not even enter into the mid portion of the cystic duct".

*Mid-portion of the cystic duct? This should have been removed in original Cholecystectomy by Dr. Alcover-Ballard. S. Harper, LNC*

**May 3, 2017**: Patient returns to Dr. Anthony Daniels, again complaining of RUQ abdominal plan. Orders from this visit yielded a referral to "Biliary surgery at UNC/CH for consideration for a surgical resection of a gallbladder remnant containing stones".

**August 24, 2017**: Patient seen at Duke by Dr. Ranjan Sudan (General Surgeon) for surgery. <u>OPERATIVE FINDINGS</u>: "Retained gallbladder with stones…". During the procedure, Dr. Sudan and Assistant MD found "some adhesions in the gallbladder fossa". The "remnant gallbladder was removed by identifying the cystic structures". The <u>cystic duct </u>was "double clipped proximally and singly clipped distally and divided". Dr. Sudan will testify he did the final surgery were he removed the remnants.

*The remnants should not be there if Dr. Alcover-Ballard performed a Total Laparoscopic Cholecystectomy. This also raises a question about reported findings of the surgical specimen originally submitted to Pathologist, Dr. Novae Simper. He claimed specimen as "gallbladder" and the "cystic duct" which was "not obstructed". S. Harper, LNC*

Dr. Sudan's submitted specimen to pathology was examined by Pathologist Richard M. Draffin, MD. **SPECIMEN: "Gallbladder, stitch marks from Dr. Sudan's clip – true cystic duct. Multiple clips from previous surgery." GROSS EXAM: "Several clips are identified on the surface of the gallbladder.**

*Clips ON the gallbladder? Should not be on gallbladder but at the neck of the cystic duct (proximal) and the bottom (distal) portion of the cystic duct, which shows here but should have been removed in original surgery. These findings by Dr. Draffin negate Dr. Alcover-Ballard's Op-Report as well as Dr. Novae Simper's Pathology Report from original Cholecystectomy. S. Harper, LNC*

**April 3, 2020**: Self-referral to see **Dr. Reza Rabbar-Semnani (Colorectal MD)** – Reason for visit: **"Persistent right upper quadrant pain after laparoscopic cholecystectomy in 2012". NOTE: This was a "TELEPHONE visit/consultation", therefore no hands-on or in-person interaction with patient.** NOT the preferred method by most surgeons. **Also, this surgeon was not present for ANY of the patient's surgeries or the Pathology examinations. All he had to go by was other doctor's documentation.** With this information he stated, "upon review of the medical record, it **appears as if he underwent a laparoscopic cholecystectomy in 2012 and likely had a long cystic duct"**, (*not documented in any of the doctors' H&Ps or Post-op Records*). **Dr. Rahbar-Semnani said, "He ultimately had to have the cystic duct/gallbladder remnant removed".**

*The telephone visit/consultation shows that Dr. Rahbar-Semnani admits he could not be sure because he "did not physically see the removal". However, this MD would NOT state his doubt in his write-up. (See Medical Record) S. Harper, LNC*

**April 27, 2020**: Patient visited with NC Surgery at Raleigh to see **Dr. Michael Compte**. Dr. Rahbar-Semnani requested this consult on MSGT Terry "regarding evaluation of post-cholecystectomy pain". Again, this was a telephone visit/consultation. Dr. Compte basically repeated the patient's History based upon other doctors' documentation. Dr. Compte's "assessment of his complicated course is that he developed post-cholecystectomy syndrome from a dilated cystic duct". **Also noted was the following... "He (MSGT Terry) reports that he did not**

achieve resolution of his symptoms and incidentally did not have stones on the (original) pathology specimen, however it is unclear if these were removed during examination of the gallbladder at the time of surgery". Also stated is the following: "Ultimately, I believe he was suffering from retained stones in his cystic duct…". The opinion that the retained stones caused "distention of the terminal cystic duct…" Then "led to the appearance of a remnant gallbladder with recurrent stones and sludge" demonstrates his opinion which would point back to the fact Dr. Alcover-Ballard did NOT perform a COMPLETE Laparoscopic Cholecystectomy.

## III.  NOTEWORTHY

## QUOTE FROM PATIENT REGARDING
## HIS TELEPHONE VISIT/CONSULTATION

"To Whom It May Concern

Subject: Bobby Terry Gallbladder Removal Ordeal

Reference the telephone consult I had with Dr. Reza Rahbar-Semnani on April 3, 2020. I asked him if he considered this as an incomplete cholecystectomy as the medical definition states, that "if a portion of the gallbladder/gallbladder remnant is left unintentionally, especially with stones, it is considered incomplete". *Philip Thorek, M.D. JAMA 1958; 166(11): 1363-1366.*

This surgeon stated that it could be a long cystic duct or gallbladder remnant, but **because he physically did not see the removal, he could not state that for sure.**

Please refer to Dr. Rahbar's Assessment and Plan where he states: He "ultimately had to have the cystic duct/gallbladder remnant removed." (See Medical Record)

## IV. RELEVANT AUTHORITIES

The following excerpts are from one of multiple publications from **Attorney B. Kent Buckingham**, Buckingham Barrera Law Firm  1707 West Wall Street, Midland, TX 79701-6529. Attorney Buckingham's Biography includes... (Board Certified, Personal Injury Trial Law, Texas Board of Legal Specialization). His areas of practice are Medical Malpractice and Personal Injury.

***Underlined portions are for emphasis from my medical review, my surgical knowledge from the operating room and personal experience with this surgery. S. Harper, LNC***

---

Biliary injury is the greatest problem besetting one of the greatest advances in biliary operation during this century, the laparoscopic cholecystectomy. The key to this problem is not in complicated repairs at tertiary centers but in prevention. Prevention requires commitment to perform meticulous dissection so that only structures that have been unequivocally and conclusively identified are divided.

**Steven M. Strasberg et al., An Analysis of the Problem of Biliary Injury During Laparoscopic Cholecystectomy, 180 J. AM. C. SURGEONS 101, 125 (1995).**

1. Currently, 90 percent of cholecystectomies are done laparoscopically, and the procedure is the most common one performed in a general surgery practice. Yet, the benefits of the procedure have been attained against the backdrop of an alarmingly increased number of iatrogenic injuries, or those inadvertently induced by the surgeon.

2.  The only true cure for gallstones is removal of the gallbladder itself. Fortunately, the gallbladder is not an organ necessary for our existence. Once it is removed, minor digestive problems may occur, but the primary functioning of the digestive system remains undisturbed. Surgeons now consider laparoscopic cholecystectomy to be the "gold standard" when removal of the gallbladder is necessary.

3.  In the typical procedure, the end of the gallbladder is pulled upward toward the diaphragm. This allows the cystic duct, the cystic artery, and the common bile duct to be seen. Once these structures have been clearly identified and dissected away from the surrounding tissue, the cystic duct is sealed with a clip placed near its junction with the gallbladder. The surgeon then places two more clips near the point where the cystic duct joins the common bile duct. The cystic duct is cut and separated between the clips. The cystic artery, which provides the main blood supply to the gallbladder, is then divided in the same way. In performing this surgery, the surgeon must be meticulous, for the cardinal rule of a Laparoscopic Cholecystectomy is that no anatomic structures are clipped or cut until the surgeon is unequivocally certain that they have been properly identified.

    **Id.; see A.R. Moossa et al., Iatrogenic Injury to the Bile Duct: Who, How, Where? 125 ARCHIVES OF SURGERY 1028, 1029 (1990).**

4.  Early in the procedure, if there is any doubt as to the identification of the biliary structures, the surgeon may perform an intraoperative cholangiogram. This procedure may also be done if it is suspected that a stone has lodged in the common duct. Cholangiography is also especially helpful in detecting any unusual anatomy–a typical defense raised by the surgeon.

5.  Another possible reason for iatrogenic injury, typically asserted as a defense in laparoscopic cholecystectomy cases, is that of anomalous anatomy. The surgeon and defense experts will claim that the cystic duct and common bile duct were in such an unusual relationship anatomically that it was not below the standard of care for the surgeon to have misidentified and cut the

(common bile duct. This is easily rebutted by showing that there is no "normal anatomy" of the biliary tract. A common pattern of several anatomic variants  cont.) exists, and it is the surgeon's responsibility to recognize these normal variations when they occur.
**David B. Adams, The Importance of Extra-hepatic Biliary Anatomy in Preventing Complications at Laparoscopic Cholecystectomy, 73 SURGICAL CLINICS OF N. AM. 861, 870 (1993).**

6. Iatrogenic injury to the bile duct is avoidable if the surgeon adheres to proper surgical methods. A patient who experiences this injury can be faced with a life of pain, loss of quality of life, ongoing surgical interventions, and enormous medical expenses.

7. An attorney who is called on to assist a client who has suffered such a catastrophic injury should remember the words of Dr. George Grey Turner, who over half a century ago, wrote, "Injuries to the main ducts are nearly always the result of misadventures during operations and are therefore a serious reproach to the surgical profession. They cannot be regarded as just an ordinary risk".
**George Grey Turner, Injuries to the Main Bile Ducts, 1 LANCET 621 (1944).**

## V. POINTS OF EMPHASIS

**Previous, underlined portions speak for themselves, but those of notable interest are as follows:**

# 3. MSGT Terry's original Cholecystectomy surgeon, Dr. Alcover- Ballard, did not perform the surgery properly. This is shown by findings from multiple other MDs and a Pathologist, **mentioned throughout MSGT's chronological review**, who identified remnants left in the patient.....a "large portion of the gallbladder", the cystic duct, gallstones and "clips on the gallbladder".

*So the elephant in the room, so to speak, is this..... was Dr. Alcover- Ballard "meticulous of the cardinal rule"? S. Harper, LNC*

# 4. Did Dr. Alcover-Ballard perform an intraoperative cholangiogram?
*Operative records do not mention this was performed, so it appears the surgeon **did not have any doubt** regarding the identification of the biliary structures in MSGT Terry. This is not an example of "meticulous dissection".*
*S. Harper, LNC*

# 5. It is the **"surgeon's responsibility** to recognize these normal variations when they occur".

# 7. The inadequacies of the original Laparoscopic Cholecystectomy surgeon, Dr. Alcover-Ballard, would demonstrate "misadventures" during the operation and "therefore a serious reproach to the surgical profession. **They cannot be regarded as just an ordinary risk".**

## VI.    CONCLUSION

A thorough review of MSGT Terry's medical records show repetitive procedures, professional statements by multiple surgeons and pathologists, and published, medical articles which supports this conclusion within.  Without a doubt, the original Laparoscopic Cholecystectomy by Dr. Alcover-Ballard was **NOT** performed properly. The surgery was **NOT** complete and the original pathologist, Dr. Novae Simper, MAJ/MC, gave an incorrect "Gross Examination" report of the surgical specimen submitted by Dr. Alcover-Ballard. These practices are BELOW the Standard of Care..

We also question why several other private practice surgeons, who saw and examined MSGT Terry, did not suggest surgical intervention earlier?  Possible negligence on their part as well, especially based on their findings of gallbladder remnants and the fact MSGT repeatedly complained of RUQ pain "like he had" before his original surgery?

As shown in this entire review, the result was ultimately years of pain and suffering for MSGT Terry. If Dr. Alcover-Ballard had been "meticulous" and followed "the cardinal rule of a Laparoscopic Cholecystectomy" and the Pathologist, Dr. Novae

Simper, had examined the surgical specimen properly, such malpractice and injustice would never have happened to MSGT Terry.

## VII.   IN CLOSURE

MSGT Terry has endured multiple years of social, family, marital, monetary, physical, psychological, and personal pain and suffering, all because of a gross error made in one of the most straight forward and common general surgical procedures, a Laparoscopic Cholecystectomy. As of today, MSGT still cannot do the things he did before the initial surgery, like running, play basketball, remodel cars, yard work, and various other activities. MSGT Terry deserves justice for the errors made by his surgeon at Womack Army Medical Center.